UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY, and NORTH PACIFIC INSURANCE COMPANY, | No.: |
| Plaintiffs, | COMPLAINT FOR DECLARATORY JUDGMENT |
| v. | |
| DEL RAY PROPERTIES, INC., a Washington corporation; CITY OF LONGVIEW, a Washington municipal corporation; SHARON DOERR, an individual, | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiffs West American Insurance Company ("West American") and North Pacific Insurance Company ("North Pacific") hereby bring this Complaint for Declaratory Judgment against Defendants Del Ray Properties, Inc., City of Longview, and Sharon Doerr (collectively "Defendants", and individually "Defendant").

## II.  PARTIES

1.1     West American is a company organized under the laws of the State of Indiana with its principal place of business located at 175 Berkeley St., Boston, MA 02116.  At all

times, West American was in the business of providing insurance and was licensed to issue insurance policies in the State of Washington.

1.2    North Pacific is a company organized under the laws of the State of Oregon with its principal place of business located at 175 Berkeley St., Boston, MA 02116.  At all times, North Pacific was in the business of providing insurance and was licensed to issue insurance policies in the State of Washington.

1.3    Defendant Del Ray Properties, Inc. (hereinafter "Del Ray") is a Washington corporation that does business within the City of Longview, Washington.

1.4    Defendant City of Longview (hereinafter "City") is a governmental entity, organized and existing under the laws of the State of Washington.

1.5    On information and belief, Defendant Sharon Doerr (hereinafter "Doerr") is an individual residing in Cowlitz County, Washington and domiciled in the State of Washington.

### III.  JURISDICTION AND VENUE

2.1    West American and North Pacific incorporate by reference all allegations set forth in paragraph 1.1 through 1.5 as if fully set forth herein.

2.2    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the plaintiffs are citizens of different states than all defendants.

2.3    Venue is proper pursuant to 28 U.S.C. § 1339(b)(1) & (2) because all defendants reside in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### IV.  FACTS

3.1    West American and North Pacific incorporate by reference all allegations set forth in paragraphs 1.1 through 2.3 as if fully set forth herein.

**A.**     <u>**The Underlying Lawsuit**</u>

3.2     The City filed a lawsuit against Defendant Del Ray in Cowlitz County Superior Cause No. 16-2-00849-7 (the "City Lawsuit").

3.3     Doerr filed a lawsuit against Defendant Del Ray in Cowlitz County Superior Court Cause No. 17-2-00870-08 (the "Doerr Lawsuit").

3.4     Randall Beck, a non-party to the above-captioned lawsuit, filed a lawsuit against Defendant Del Ray in Cowlitz County Superior Court Cause No. 17-2-00936-08 (the "Beck Lawsuit").  As discussed further below, Beck was dismissed as a party from the Underlying Lawsuit on February 9, 2021.

3.5     On September 6, 2017, the City Lawsuit, the Doerr Lawsuit, and the Beck Lawsuit were consolidated under the Doerr Lawsuit (Cowlitz County Superior Court Cause No. 17-2-00870-08), and, as consolidated, the City Lawsuit, the Doerr Lawsuit, and the Beck Lawsuit are collectively referred to as the "Underlying Lawsuit."

**1.**     <u>**City Lawsuit**</u>

3.6     In its Amended Complaint for Monies Owed, dated July 27, 2017 (the "City Complaint;" attached as **Exhibit A**), the City alleged that Del Ray established utility accounts with the City pursuant to which the City agreed to provide utilities including water to Del Ray for (1) seventy-five (75) unit mobile home park located at 1112 Tennant Way, Longview, Washington ("Del Ray I"); and (2) a sixty-six (66) unit mobile home park, located 5600 Mt. Solo Road, Longview, Washington ("Del Ray II").

3.7     The City Complaint alleged that Del Ray had become delinquent on its utility accounts for Del Ray I and Del Ray II and had failed to make payment for the utility service it continued to receive from the City.

3.8     The City Complaint alleged that the City made a demand for payment from Del Ray for delinquent utility charges for both Del Ray I and Del Ray II.

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

3.9     The City Complaint alleged that Del Ray has failed to make payment for past and current utility service.

3.10    The City Complaint requests payment of unpaid fees for utilities and prejudgment and post-judgment interest as allowed by law, including without limitation interest at twelve percent (12%) per annum as allowed by RCW 19.52.010.  The City Complaint seeks no other monetary damages.

**2.    Doerr Lawsuit**

3.11    In her Complaint for Declaratory and Injunctive Relief and Damages, dated August 7, 2017 (the "Doerr Complaint;" attached as **Exhibit B**), Doerr alleged that she lives at Del Ray I and that she entered into a rental agreement with Del Ray to rent a mobile home lot at Del Ray I (the "Doerr Lease Agreement").

3.12    The Doerr Complaint alleged the Doerr Lease Agreement obligated Del Ray to pay for water, sewer, and garbage utilities out of Doerr's monthly rent payments.

3.13    The Doerr Complaint alleged that Del Ray failed to pay utility services in violation of the Doerr Lease Agreement.

3.14    The Doerr Complaint alleged that the City issued shut off notices to all tenants at Del Ray I in November 2016.

3.15    The Doerr Complaint alleged that the City issued shut off notices to all tenants in June 2017 "due to [Del Ray's] … delinquency on the Del Ray I account."  Based on information and belief, the City has never shut off utilities to Del Ray I.

3.16    The Doerr Complaint alleged that "[a]s a result of [Del Ray's] failure to pay the utility bill, the City ha[d] issued shut-off-notices the week of July 24, 2017 indicating services will be terminated on July 31, 2017."  Based on information and belief, the City has never shut off utilities to Del Ray I or Del Ray II.

3.17    The Doerr Complaint alleged that "[i]n June 2016, the City of Longview issued shut-off-notices to tenants at Del Ray II due to [Del Ray's] … delinquency on the Del

COMPLAINT FOR DECLARATORY JUDGMENT NO.:

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Ray II account."  Based on information and belief, the City has never shut off utilities to Del Ray II.

3.18    The Doerr Complaint alleged that "[Del Ray] has knowingly and willfully failed to pay the City of Longview utility bills for the Del Ray I manufactured housing community, where [Doerr] is a tenant."

3.19    The Doerr Complaint alleged that "[w]ith full knowledge that the City of Longview propose[d] to terminate Del Ray I utilities, [Del Ray] collected July and August rent from the tenants."

3.20    The Doerr Complaint asserted causes of action against Del Ray for Violation of the Manufactured/Mobile Home Landlord-Tenant Act, Breach of Contract, Violation of the Consumer Protection Act, and Emotional Distress.

3.21    The Doerr Complaint alleged that "[Del Ray]'s knowing and willful refusal to pay the City of Longview bill for the Del Ray I manufactured housing community … violates the Manufactured/Mobile Home Landlord-Tenant Act …."

3.22    The Doerr Complaint also alleged that Doerr would "suffer immediate harm if she is forced to live with no water, sewer and garbage service pending moving, even if she is able to relocate, as she and the other residents in the Del Ray I community need water for basic sanitation, cooking, drinking and hygiene."  As a result, the Doerr Complaint sought injunctive relief requiring Del Ray to bring all utility charges current.  Based on information and belief, the City never shut off water, sewer, or garbage services to Doerr as a result of Del Ray's refusal to pay utility charges to the City.

3.23    The Doerr Complaint alleged that Doerr "and other tenants will incur damages and be irreparably harmed if forced to relocate from Del Ray I as a result of being denied basic utilities necessary for the enjoyment of their homes."  As a result, the Doerr Complaint sought injunctive relief requiring Del Ray to bring all utility charges current.  Based on information and belief, Doerr was not denied basic utilities necessary for the enjoyment of

1  her homes, and was not forced to relocate from Del Ray I as a result thereof.

2        3.24    On information and belief, Cowlitz County Superior Court entered an Order

3  dated August 9, 2017, in the Underlying Lawsuit, granting Doerr's Motion for Preliminary

4  Injunction (the "Order Granting Doerr Injunction"), wherein the court held that Doerr

5  appeared likely to prevail ultimately at trial, that the Plaintiff had well-grounded fear of (1)

6  increased costs to purchase water; (2) hygienic concerns; (3) having to move to new housing;

7  and (4) irreparable injury if Del Ray did not pay outstanding water utility charges with the

8  City, in the amount of $1,609.73.  The Court ordered Del Ray to pay the outstanding water

9  bill to the City and to pay utility bills for water and sewer service for Del Ray I as bills

10  became due.  Furthermore, the Court ordered Del Ray not to harass, intimate, threaten, or

11  retaliate against Doerr by reason of her bringing Doerr Lawsuit.

12        3.25    On October 18, 2017, Cowlitz County Superior Court found Del Ray in

13  contempt of the Order Granting Doerr Injunction, for willfully refusing to pay bills, and as a

14  result held as follows: (1) Del Ray was ordered to pay $3,300 as a punitive sanction; and (2)

15  Del Ray was ordered to pay fees to Doerr's counsel in the amount of $2,674.

16        3.26    On March 13, 2019, Cowlitz County Superior Court, again, found Del Ray in

17  contempt of the Order Granting Doerr Injunction (the "Second Finding of Contempt"), for

18  willfully harassing Doerr when it had the ability to comply, and as a result held as follows:

19  (1) Del Ray was ordered to pay attorney fees incurred to bring the motion; and (2) Del Ray

20  was ordered to pay fees to Doerr's counsel in the amount of $10,764.

21        3.27    On information and belief, the Court of Appeals entered an Opinion on

22  October 13, 2020 and a Mandate on January 26, 2021, affirming the Second Finding of

23  Contempt, and remanded to Cowlitz County Superior Court to enter findings on (1) whether

24  the requested attorney time and fees were reasonable to obtain Second Finding of Contempt;

25  and (2) fees to Doerr for time spent defending the appeal.

26

COMPLAINT FOR DECLARATORY JUDGMENT
NO.:

PAGE 6

**Bullivant|Houser|Bailey PC**

925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

3.28    Pursuant to the Court of Appeals' Opinion and Mandate, the Cowlitz County Superior Court, on January 4, 2022, ordered Del Ray to pay Doerr her attorney fees in the amount of $15,427.50.

**3.    Randall Beck's Lawsuit**

3.29    In his Amended Complaint for Declaratory and Injunctive Relief and Damages, dated November 17, 2017 ("Beck Complaint;" attached as **Exhibit C**), Beck alleged that he "lives at Del Ray II" and that "[i]n July 2015, [Beck] entered into a rental agreement with [Del Ray] to rent a mobile home lot at Del Ray II" (the "Beck Lease Agreement").

3.30    The Beck Complaint alleged that the Beck Lease Agreement obligated Del Ray to pay for water, sewer, and garbage utilities out of Beck's monthly rent payments.

3.31    The Beck Complaint alleged that Del Ray failed to make payments on the utility services provided by the City.

3.32    The Beck Complaint alleged that the City issued shut off notices to all tenants at Del Ray II in June 2016 due to [Del Ray's] alleged delinquency on the Del Ray II account. Based on information and belief, the City never shut off utility services to Del Ray II.

3.33    The Beck Complaint alleged that "[a]s a result of [Del Ray's] failure to pay the utility bill, the City … issued shut-off-notices the week of August 16, 2017 indicating services will be terminated on August 23, 2017."  Based on information and belief, the City never shut off utility services to Del Ray I or Del Ray II.

3.34    The Beck Complaint alleged that "[Del Ray] has knowingly and willfully failed to pay the City of Longview water sewer and garbage bills for the Del Ray II manufactured housing community, where [Beck] is a tenant."  Based on information and belief, the City never shut off services to Del Ray II.

3.35    The Beck Complaint alleged that "[w]ith full knowledge that the City of Longview propose[d] to terminate Del Ray II utilities, [Del Ray] collected August rent from

the tenants."

3.36    The Beck Complaint asserted causes of action against Del Ray for Violation of the Manufactured/Mobile Home Landlord-Tenant Act, Breach of Contract, Violation of the Consumer Protection Act, Breach of Covenant of Quiet Enjoyment, Breach of the Covenant of Good Faith and Fair Dealing, and Outrage.

3.37    The Beck Complaint alleged that "[Del Ray]'s knowing and willful refusal to pay the City of Longview bill for the Del Ray II manufactured housing community … violates the Manufactured/Mobile Home Landlord-Tenant Act …."

3.38    The Beck Complaint also alleged that "Beck will suffer immediate harm if he is forced to live with no water, sewer and garbage service pending moving, even if he is able to relocate, as he and the other residents in the Del Ray II community need water for basic sanitation, cooking, drinking and hygiene."  As a result, the Beck Complaint sought injunctive relief requiring Del Ray to bring all utility charges current.  Based on information and belief, the City never shut off water, sewer or garbage service to Beck.

3.39    The Beck Complaint alleged that "Beck and other tenants will incur damages and be irreparably harmed if forced to relocate from Del Ray II as a result of being denied basic utilities necessary for the enjoyment of their homes."  As a result, the Beck Complaint seeks injunctive relief requiring Del Ray to bring all utility charges current.  Based on information and belief, Beck was never forced to relocate from Del Ray II as a result of being denied basic utilities necessary for the enjoyment of his home at Del Ray II.

3.40    On February 29, 2021, Cowlitz County Superior Court dismissed Beck as a party from the Underlying Litigation ("Beck Dismissal Order, attached as **Exhibit D**).

3.41    Based on information and belief, Beck is currently asserting no claims in any lawsuit against Del Ray.

3.42    Based on information and belief, Beck has obtained no judgments against Del Ray for monetary damages for which Del Ray must pay.

COMPLAINT FOR DECLARATORY JUDGMENT
NO.:

Bullivant|Houser|Bailey PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

3.43    As such, there are no claims by Beck for which West American and North Pacific must defend, and no judgments for which West American and North Pacific must indemnify.

**4.    <u>Appointment of Custodial Receiver & Petition for Fees and Petition to Leave</u>**

3.44    On July 27, 2021, Cowlitz County Superior Court appointed Frank Randolph as a custodial Receiver in the Underlying Lawsuit to assume control from Del Ray of all monies paid by tenants at Del Ray I (the "Order Appointing Receiver").

3.45    On August 2, 2021, Del Ray executed a $1.5 million Deed of Trust, placing Del Ray I into trust for the benefit of Seattle Funding Group, a Washington corporation. Subsequently, Del Ray executed a financing statement under the Uniform Commercial Code, establishing Seattle Funding Group as a secured creditor of Del Ray and all properties associates therewith.

3.46    On August 26, 2021, Del Ray sent a letter to Randolph, threatening to sue him if he did not cease his efforts to effectuate the Order Appointing Receiver.

3.47    Del Ray failed to comply with the Order Appointing Receiver.

3.48    On March 4, 2022, Randolph requested, in his Petition to Pay and Reimburse Receiver, Cowlitz County Superior Court to order: (1) Del Ray to pay Randolph's incurred fees and costs from March 11, 2021 to March 10, 2022 in the amount of $4,841.98 ("Randolph Fees"); (2) Randolph's hourly rate to be increased to $230 per hour; and (3) to create a lien on Del Ray I and/or Del Ray II for the Randolph Fees.

3.49    On March 28, 2022, Randolph amended his request to the Cowlitz County Superior Court and filed a "Petition for Leave to Resign and Discharge as Receiver" ("Amended Petition," attached as **Exhibit E**).  The Amended Petition stated as follows:

3.49.1  "Petitioner was appointed to be the receiver of monies from the tenants of Del Ray I Mobile Home Park to collect rent payments from Defendant's tenants and to use

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

said rent monies to pay certain utility services which Del Ray allegedly has failed to pay, by order of this court, entered on July 21, 2021."

3.49.2  "Ever since said that [sic] order, Defendant DEL RAY PROPERTIES, INC., has refused to cooperate, denying the Petitioner's authority or his right to receive any such monies.  A true and accurate copy of Mr. Larry Foster's letter to Petitioner, dated August 26, 2021, is attached as Exhibit A [to Randolph's Petition]."

3.49.3  "Therefore, petitioner now requests leave to resign as a receiver for the following reasons: Mr. Foster's [sic] has refused to comply with this Court's July 2021 order, the petitioner has failed to collect any monies as ordered by the court on July 21, 2021, and another year has been added to this long dispute, without any progress towards resolution. The petitioner does not believe he has the ability to help resolve this dispute, nor is he likely to develop such ability in a timely manner.  He sincerely apologizes to the court and to the parties for this failing."

3.49.4  "Petitioner does not now seek, nor will seek, any compensation for the legal services performed or for costs incurred in connection with the receivership.  Any such service or cost is, and has been, *pro bono*."

3.49.5  "WHEREFORE, Petitioner requests: 1. An order granting petition leave to resign as the receiver in the above-entitled proceedings."

3.49.6  "WHEREFORE, Petitioner requests: … 2. An order discharging Petitioner from further responsibility in this matter, and releasing Petitioner from any and [sic] liability that may have been incurred or might arise subsequent to the discharge and release."

3.50  On April 27, 2022, Cowlitz County Superior Court granted Randolph's Amended Petition as a result of Del Ray's refusal to cooperate and denial of Randolph's authority to receive monies.  The Court discharged Randolph from further responsibilities as a custodial Receiver, and no fees were awarded.

COMPLAINT FOR DECLARATORY JUDGMENT
NO.:

PAGE 10

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

**B.**     <u>**CGL Policy**</u>

3.51     West American issued a Commercial General Liability Insurance Policy No. BKW (17) 57 42 82 52 to Defendant Del Ray Properties, Inc. for policy period of October 25, 2016, to October 25, 2017 (the "CGL Policy;" attached as **Exhibit F**).  The CGL Policy is subject to per occurrence limits of $1,000,000 and identifies the insured location as "5600 Mt Solo Rd, Longview, WA 98632-9439" (Del Ray II).

3.52     Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability, paragraph 1. Insuring Agreement section of the CGL Policy provides coverage as follows:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1.     Insuring Agreement**

  **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

     **(1)**     The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

     **(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.**     This insurance applies to "bodily injury" and "property damage" only if:

     **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

     **(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

\*     \*     \*

3.53    The CGL Policy does not afford liability coverage for bodily injury or property damage which is expected or intended from the standpoint of the insured. Specifically, Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability, paragraph 2. Exclusions section of the CGL Policy provides:

**2.    Exclusions**

This insurance does not apply to:

**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.[1]

3.54    Section I – Coverages, Coverage B – Personal and Advertising Injury Liability, paragraph 1. Insuring Agreement section of the CGL Policy provides coverage as follows:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments

---

[1] As Amended by Policy Form CG 88 10 04 13 (at 8).

or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

        *     *     *

3.55    The CGL Policy does not afford liability coverage for personal and advertising injury caused by the insured with the knowledge that the act would violate the rights of another, arising out of oral or written publication, or breach of contract.  Specifically, Section I – Coverages, Coverage B – Personal and Advertising Injury Liability, paragraph 2. Exclusions of the CGL Policy provides:

    **2.**    **Exclusions**

This insurance does not apply to:

    **a.**    **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

    **b.**    **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any matter, of material, if done by or at the direction of the insured with knowledge of its falsity.

        *     *     *

    **f.**    **Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

3.56    The CGL Policy is subject to the following definitions:

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

3.     "Bodily injury" means physical injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.[2]

\*     \*     \*

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*     \*     \*

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**     False arrest, detention or imprisonment;

    **b.**     Malicious prosecution;

    **c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**     Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**     The use of another's advertising idea in your "advertisement"; or

    **g.**     Infringing upon another's copyright, trade dress or slogan in your "advertising."

\*     \*     \*

17.     "Property damage" means:

    **a.**     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

---

[2] As Amended by Policy Form CG 88 10 04 13 (at 7).

COMPLAINT FOR DECLARATORY JUDGMENT NO.:

PAGE 14

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

**b.**     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

**C.    Businessowners Policy**

3.57    North Pacific issued a Businessowners Policy No. BOP 12-62-60 to Defendant Del Ray Properties, Inc. for policy period October 25, 2015, to October 25, 2016 (the "Businessowners Policy;" attached as **Exhibit G**).

3.58    Section II – Liability, A. Coverages, paragraph 1. Business Liability section of the Businessowners Policy provides coverage, in part, as follows:

**SECTION II LIABILITY**
**A.    Coverages**
**1.**    Business Liability
    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
        **(1)**     The amount we will pay for damages is limited as described in Paragraph D Liability And Medical Expenses Limits Of Insurance in Section II Liability; and
        **(2)**     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses**.**
    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph f. Coverage Extension Supplementary Payments.
    **b.**     This insurance applies:
        **(1)**     To "bodily injury" and "property damage" only if:

COMPLAINT FOR DECLARATORY JUDGMENT NO.:

PAGE 15

**Bullivant|Houser|Bailey PC**

925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph C.1. Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

3.59    The Businessowners Policy does not afford liability coverage for bodily injury or property damage expected or intended from the standpoint of the insured.  Further, the Businessowners Policy does not afford liability coverage for personal and advertising injury caused by the insured with the knowledge that the act would violate the rights of another, arising out of oral or written publication, or breach of contract.  Specifically, Section II – Liability, B. Exclusions section of the Businessowners Policy denies coverage, in part, as follows:

**B.    Exclusions**
**1.**    Applicable To Business Liability Coverage
This insurance does not apply to:
**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*        *        *

**p.  Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

\*        \*        \*

**(6)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

3.60    The Businessowners Policy is subject to the following definitions:

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*        \*        \*

13.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*        \*        \*

14.      "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**      False arrest, detention or imprisonment;
**b.**      Malicious prosecution;
**c.**      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
**d.**      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
**e.**      Oral or written publication, in any manner, of material that violates a person's right of privacy;
**f.**      The use of another's advertising idea in your "advertisement"; or
**g.**      Infringing upon another's copyright, trade dress or slogan in your "advertising."
\*        \*        \*

17.      "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**D.  <u>Insurance Claim</u>**

3.61   Del Ray tendered defense and indemnity of the Underlying Lawsuit to West American and North Pacific.

3.62   West American and North Pacific agreed to defend Del Ray in the Underlying Lawsuit subject to a complete reservation of rights.

3.63   West American and North Pacific issued letters dated January 30, 2018, January 23, 2019, and July 12, 2022 (attached as **Exhibits H, I, and J**, respectively) to Del Ray, wherein West American and North Pacific agreed to provide a defense subject to a full reservation of its rights, including the right to file a declaratory judgment action and seek an order allowing it to withdraw the defense being provided.

## <u>COUNT I.</u>

### **Declaratory Judgment – The CGL Policy**

4.1   Plaintiffs incorporate by reference all allegations set forth in paragraphs 1.1 through 3.63 as if fully set forth herein.

4.2   The CGL Policy constitutes a binding and enforceable contract setting forth the rights and obligations of the parties.

4.3   An actual and justiciable controversy exists between West American and Del Ray regarding coverage under the CGL Policy.

4.4   Pursuant to the express terms, conditions, exclusions, and limitations of the CGL Policy, there is no liability coverage available to Del Ray for the claims and damages

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

alleged in the Underlying Lawsuit.

## COUNT II.

### Declaratory Judgment – Businessowners Policy

5.1     Plaintiffs incorporate by reference all allegations set forth in paragraphs 1.1 through 4.4 as if fully set forth herein.

5.2     The Businessowners Policy constitutes a binding and enforceable contract setting forth the rights and obligations of the parties.

5.3     An actual and justiciable controversy exists between North Pacific and Del Ray regarding coverage under the Businessowners Policy.

5.4     Pursuant to the express terms, conditions, exclusions, and limitations of the Businessowners Policy, there is no liability coverage available to Del Ray for the claims and damages alleged in the Underlying Lawsuit.

## REQUEST FOR RELIEF

WHEREFORE, West American and North Pacific pray for judgment in their favor and against Defendants as follows:

A.      Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that West American and North Pacific have no duty to defend or indemnify Del Ray in the Underlying Lawsuit;

B.      Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that West American and North Pacific may withdraw the defense currently being provided to Del Ray in the Underlying Lawsuit; and

C.      Such other and further relief as the Court deems just and appropriate.

//

//

1    DATED:  August 3, 2022

2                                          BULLIVANT HOUSER BAILEY PC

3

4                                          By  */s/ Michael A. Guadagno*
                                               Michael A. Guadagno, WSBA #34633
5                                              E-mail:  michael.guadagno@bullivant.com

6

7                                          By  */s/ Daniel D. Rhim*
                                               Daniel Rhim, WSBA # 58302
8                                              E-mail:  daniel.rhim@bullivant.com

9                                          Attorneys for West American Insurance Company
                                           and North Pacific Insurance Company
10

11   4872-8479-5179.1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26