UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WEST AMERICAN INSURANCE COMPANY et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEL RAY PROPERTIES INC. et al., <br><br> Defendants. | CASE NO. 3:22-cv-05563-LK <br><br> ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

Plaintiffs West American Insurance Company ("West American") and North Pacific Insurance Company ("North Pacific") seek a judgment permitting them to withdraw their legal defense of Defendant Del Ray Properties, Inc. ("Del Ray") in a pending lawsuit in Cowlitz County Superior Court. Before the Court is Plaintiffs' Motion for Summary Judgment. Dkt. No. 3. Defendants Del Ray, the City of Longview, and Sharon Doerr have not appeared or defended in this action. For the reasons stated below, Plaintiffs' motion is GRANTED.[1]

---

[1] Plaintiffs requested oral argument. Dkt. No. 3 at 1. However, the Court has determined it can rule without oral argument.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

### A. Underlying State Court Lawsuit

Del Ray is a Washington corporation that operates two mobile home parks in the city of Longview. Dkt. No. 1 at 2–3. In August 2016, Longview sued Del Ray in Cowlitz County Superior Court for failing to pay its utility bills. Dkt. No. 4-1; *see also* Dkt. No. 1-5 (Longview's amended complaint). In September 2017, the Superior Court consolidated Longview's lawsuit with two other related actions brought by Del Ray residents—Sharon Doerr and Randall Beck—under Cowlitz County Superior Court Cause No. 17-2-00870-08. Dkt. No. 4-4; *see also* Dkt. No. 1-6 (Doerr complaint); Dkt. No. 1-7 (Beck complaint). The Court refrains from reciting the entire history of the underlying state court proceedings, *see* Dkt. No. 1 at 3–10; Dkt. No. 3 at 4–9, but briefly summarizes a few additional details relevant to Plaintiffs' motion.

In its amended complaint, Longview alleges that Del Ray owes it approximately $50,000 for unpaid utility bills at Del Ray's two mobile home park locations. Dkt. No. 1-5 at 3. Longview claims that it "made a demand for payment of [Del Ray's] delinquent utility charges" but Del Ray "failed to make payment for past or current utility service." *Id.* As a result, Longview seeks to recover damages in the amount it is owed plus pre- and post-judgment interest and attorney fees. *Id.* After Longview initiated its action, Del Ray residents Sharon Doerr and Randall Beck filed suit, alleging that Del Ray "knowingly and willfully failed to pay the City of Longview utility bills," placing them at risk of Longview turning off the water and discontinuing garbage service to Del Ray residents. Dkt. No. 1-6 at 2, 4; Dkt. No. 1-7 at 2–3, 5–6. Accordingly, they request injunctive relief and damages based on, among other things, violations of Washington's Manufactured/Mobile Home Landlord-Tenant and Consumer Protection Acts, Wash. Rev. Code. §§ 59.20.070(6), 19.86.020, breach of contract, and infliction of emotional distress. Dkt. No. 1-6

1    at 5–8; Dkt. No. 1-7 at 7–11.[2] On February 9, 2021, the Superior Court dismissed Beck's claims

2    with prejudice. Dkt. No. 14-1. Based on the available records, however, Longview and Doerr's

3    claims remain pending. Dkt. No. 4-11.

4          On January 30, 2018, January 23, 2019, and July 12, 2022, Plaintiffs issued reservation of

5    rights letters to Del Ray agreeing to defend it in the consolidated state court action, but reserving

6    their right to disclaim insurance coverage. Dkt. Nos. 5-3–5-5; *see also* Dkt. No. 5 at 2.

7    **B.**    **Del Ray's Insurance Policies**

8          This case centers on two insurance policies issued to Del Ray: (1) West American's

9    Commercial General Liability Policy No. BKW (17) 57 42 82 52, for the policy period beginning

10   October 25, 2016 and ending on October 25, 2017 ("General Liability Policy"); and (2) North

11   Pacific's Businessowners Policy No. BOP 12-62-60, for the policy period beginning October 25,

12   2015 and ending on October 25, 2016, ("Businessowners Policy"). Dkt. No. 3 at 10, 15; *see* Dkt.

13   No. 5-1 (copy of General Liability Policy); Dkt. No. 5-2 (copy of Businessowners Policy).

14         1.   <u>West American's General Liability Policy</u>

15         West American's General Liability Policy provides that it will defend Del Ray in suits

16   seeking "damages because of 'bodily injury' or 'property damage'" caused by an "occurrence"

17   and unknown prior to the policy period. Dkt. No. 5-1 at 61. "Bodily injury" is defined as "physical

18   injury, sickness or disease sustained by a person," including "mental anguish, mental injury, shock,

19   fright or death that results from such physical injury, sickness or disease." *Id.* at 99. "Property

20   damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of

21   that property," or "[l]oss of use of tangible property that is not physically injured." *Id.* at 76–77.

22

---

23   [2] The Superior Court granted Doerr's request for a preliminary injunction on August 9, 2017, and ordered Del Ray to pay $1,609.73 in outstanding water and sewer service bills. Dkt. No. 4-6. Although it appears Del Ray did not comply with the entirety of this order, *see* Dkt. No. 4-7 at 3–4, the record is devoid of evidence indicating that Longview has

24   in fact turned off utility services for Del Ray residents during the pendency of litigation.

And an "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 76. The policy also provides coverage for damages because of "personal and advertising injury," which includes "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies[.]" *Id.* at 66, 76.

Importantly, the policy contains several exclusions. It excludes coverage for bodily injury or property damage "expected or intended from the standpoint of the insured." *Id.* at 100. It also does not apply to personal and advertising injuries "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict [such injury]," knowingly false publications, breach of contract, and for such injury arising out of the failure of services "to conform with any statement of quality or performance made" through advertisement. *Id.* at 67. The policy further excludes "'[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of . . . [a] delay or failure by [the insured] or anyone acting on [its] behalf to perform a contract or agreement in accordance with its terms." *Id.* at 65.

    2. <u>North Pacific's Businessowners Policy</u>

North American's Businessowners Policy is "organized somewhat differently," but "contains substantively identical coverages and exclusion." Dkt. No. 3 at 15. The policy covers "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies." Dkt. No. 5-2 at 41. Like the General Liability Policy, the Businessowners Policy is limited to bodily injury or property damages "caused by an 'occurrence'" and unknown prior to the policy period. *Id.* at 41–42. "Bodily injury" is defined by the policy as "bodily injury, sickness or disease sustained by a person[.]" *Id.* at 52. "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property

that is not physically injured." *Id.* at 54. "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* And "[p]ersonal and advertising injury," is defined as "injury, including consequential 'bodily injury', arising out of" certain offenses, including "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies[.]" *Id.* As for exclusions, the Businessowners Policy includes the same material exclusions as the General Liability Policy. *See id.* at 43, 47.

**C.     Plaintiffs' Declaratory Judgment Action**

On August 3, 2022, Plaintiffs initiated this lawsuit seeking a declaratory judgment that, based on the claims and damages asserted in the underlying state court action, no liability coverage applies to Del Ray. Dkt. No. 1 at 18–19. The same day, Plaintiffs moved for summary judgment. Dkt. No. 3. Plaintiffs effectuated service on Del Ray, Longview, and Doerr, but no Defendant has appeared or defended in this matter. Dkt. Nos. 12, 15–16. Accordingly, upon Plaintiffs' motion, Dkt. No. 17, the Clerk of Court entered default against Defendants, Dkt. No. 19.[3]

## II.     DISCUSSION

**A.     Jurisdiction**

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. *See* Dkt. No. 1

---

[3] Some courts have found summary judgment to be "an inapt procedural vehicle" when defendants are in default, instead requiring litigants to proceed with motions for default judgment. *See, e.g.*, *Phillips Factors Corp. v. Harbor Lane of Pensacola, Inc.*, 648 F. Supp. 1580, 1583 (M.D.N.C. 1986); *Fed. Trade Comm'n v. CD Cap. Invs., LLC*, No. 14-CV-141033-JLS-RNBX, 2016 WL 11756828, at *7–8 (C.D. Cal. Mar. 1, 2016); *Cont'l Ins. Co. v. Huff Enterprises Inc.*, No. 07-CV-3821-NGG, 2009 WL 3756630, at *2–3 (E.D.N.Y. Nov. 6, 2009). However, nothing in Federal Rule of Civil Procedure 56 precludes Plaintiffs from proceeding with their motion for summary judgment in this case, particularly where no concurrent motion for default judgment is pending. *See, e.g.*, *Am. Fam. Mut. Ins. Co. SI v. Bell*, No. C18-5979-RBL, 2019 WL 2339965, at *1 (W.D. Wash. June 3, 2019); *German Am. Fin. Advisors & Tr. Co. v. Rigsby*, No. 3:14-CV-00118-RLY, 2015 WL 672244, at *1 (S.D. Ind. Feb. 17, 2015), *aff'd*, 623 F. App'x 806 (7th Cir. 2015).

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 5

at 1–2; Dkt. No. 22 at 2.[4] Furthermore, the Court finds that this case presents an "actual case or controversy" under the Declaratory Judgments Act, 28 U.S.C. § 2201, and that the discretionary exercise of jurisdiction is warranted. *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143–45 (9th Cir. 1994).

The "philosophic touchstone" for district courts when determining whether to exercise discretion to retain jurisdiction over a declaratory judgment action are the factors outlined by the Supreme Court in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). *Am. Cas. Co. of Reading, Pennsylvania v. Krieger*, 181 F.3d 1113, 1118 (9th Cir. 1999) (quotation marks omitted); *accord Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1280, 1284 (9th Cir. 2021). As a general rule, *Brillhart* directs that the court should avoid needless determinations of state law issues, discourage litigants from filing declaratory actions as a means of forum shopping, and avoid duplicative litigation. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc). In addition, "[i]f there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Id.*; *see also id.* at 1225 n.5 (noting that the *Brillhart* factors are "not exhaustive," and listing additional consideration such as whether the declaratory action (1) "will settle all aspects of the controversy;" (2) "will serve a useful purpose in clarifying the legal relations at issue;" (3) "is being sought merely for the purposes of procedural fencing or to obtain

---

[4] The complaint alleges that West American is organized under the laws of Indiana and maintains its principal place of business in Massachusetts, and that North Pacific is organized under the laws of Oregon and maintains its principal place of business in Massachusetts. Dkt. No. 1 at 1–2. Separately, Plaintiffs allege that Longview is a Washington governmental entity and that Doerr resides in Washington. *Id.* at 2. After failing to allege Del Ray's principal place of business, the Court ordered Plaintiffs to show cause as to Del Ray's corporate citizenship. Dkt. No. 21. Plaintiffs timely responded, averring that Del Ray is a Washington corporation with its principal place of business in Washington. Dkt. No. 22 at 2; Dkt. Nos. 23-1–23-3. Accordingly, the Court is satisfied that there is complete diversity of citizenship.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 6

a res judicata advantage;" or (4) "will result in entanglement between the federal and state court systems." (cleaned up)).

Here, despite the existence of an arguably parallel state proceeding arising from the same factual circumstances, involving some of the same parties, and implicating an area of law (insurance) regulated by the states, *see, e.g.*, *Nautilus Ins. Co. v. RMB Enterprises, Inc.*, 497 F. Supp. 3d 936, 949–51 (D. Haw. 2020), the Court finds that exercising jurisdiction over Plaintiffs' request for a declaration is appropriate under the *Brillhart* factors. As an initial matter, Plaintiffs are not party to the underlying state court action, that suit does not include the insurance coverage issue, and this Court's adjudication of the coverage dispute is not contingent on any further state court proceedings. *See Krieger*, 181 F.3d at 1119. Second, Plaintiffs' preference for federal resolution of their claim on the basis of diversity jurisdiction does not on its own establish forum shopping. *See First State Ins. Co. v. Callan Assocs., Inc.*, 113 F.3d 161, 162 (9th Cir. 1997) ("Although occasionally stigmatized as 'forum shopping,' the desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III."). And last, the Court does not find this litigation to be duplicative given that Del Ray's ultimate liability is not at issue here. Therefore, the Court will, as a matter of discretion, exercise jurisdiction over Plaintiffs' claims.

**B.     Summary Judgment Standard**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it could affect the outcome of the case, and a dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, the relevant inquiry is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. At the summary judgment phase, courts view the facts and draw all reasonable inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

C.     **Plaintiffs Are Entitled to Summary Judgment**

Plaintiffs argue they are entitled to summary judgment because the pleadings against Del Ray in the underlying action are either not covered by the policies or fall under one of the exclusions. Dkt. No. 3 at 20–34. Plaintiffs also seek reimbursement of defense costs incurred after the issuance of the July 12, 2022 reservation of rights letter. *Id.* at 34–36; *see* Dkt. No. 1-14 at 9, 13–14.

    1. <u>Plaintiffs have no duty to defend Del Ray under either the General Liability Policy or the Businessowners Policy</u>

"Interpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect." *Evanston Ins. Co. v. Clartre, Inc.*, 158 F. Supp. 3d 1110, 1114 (W.D. Wash. 2016) (quoting *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002)). The standard for interpreting insurance contracts in Washington is well-settled: the words "should be construed according to their ordinary meaning, according to how an average person would read the terms, as opposed to applying any technical interpretation." *Canal Ins. Co. v. YMV Transp., Inc.*, 867 F. Supp. 2d 1099, 1104 (W.D. Wash. 2011); *accord Weyerhaeuser Co. v. Com. Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000).

The duty to defend "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Expedia, Inc. v. Steadfast Ins. Co.*, 329 P.3d 59, 64 (Wash. 2014) (cleaned up). Whether an insurer has a duty to defend is therefore generally determined from the "eight corners" of the

insurance contract and underlying complaint. *Id.* at 64. However, if coverage "is not clear from the face of the complaint but . . . could exist, the insurer must investigate and give the insured the benefit of the doubt on the duty to defend." *Id.* at 65. Further, "if the allegations in the complaint conflict with facts known to the insurer or . . . are ambiguous, facts outside the complaint may be considered." *Id.*; *see also Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 282 (Wash. 2002). When inquiring whether a duty to defend exists, courts construe ambiguous complaints liberally in favor of triggering the duty, and construe exclusionary clauses strictly against the insurer. *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). But "alleged claims which are clearly not covered by the policy relieve the insurer of its duty." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). Because these determinations often "turn on the purely legal questions of interpretation of insurance policies and complaints, they are routinely resolved at the summary judgment stage." *Evanston*, 158 F. Supp. 3d at 1114.

Here, Plaintiffs may withdraw their defense of Del Ray pursuant to the General Liability Policy and Businessowners Policy because even when construed liberally, the underlying allegations do not land within the scope of policy coverage.

    *(a) Doerr's allegations*

Doerr's complaint avers that Del Ray "knowingly and willfully" failed to pay its utility bills. Dkt. No. 1-6 at 2, 4–5. She asserts claims for injunctive relief and damages for violations of Washington's Manufactured/Mobile Home Landlord-Tenant and Consumer Protection Acts, Wash. Rev. Code. §§ 59.20.070(6), 19.86.020, breach of contract, and emotional distress. *Id.* at 6–8.[5] Because Doerr alleges knowing and deliberate misconduct on the part of Del Ray, proving her

---

[5] The Court need not address Beck's allegations in the underlying complaint given that he was dismissed from the state court action in February 2021 and "[t]here are no current claims asserted by Beck against Del Ray." Dkt. No. 3 at 7; Dkt. No. 14-1. However, given the substantial overlap between the Beck and Doerr complaints, the Court's reasoning would apply with equal force to his claims.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 9

claim will not result in a showing of "bodily injury" or "property damage," *caused by* an "occurrence," i.e., "an accident," as necessary to trigger Plaintiffs' duty to defend under either policy. *See* Dkt. No. 5-1 at 61, 76; Dkt. No. 5-2 at 41, 54; *see also* Dkt. No. 3 at 26–27; *Safeco Ins. Co. of Am. v. Lenz*, No. C22-442-RSM, 2023 WL 2018002, at *4 (W.D. Wash. Feb. 14, 2023) ("Under the common law definition of 'accident,' reasonably foreseeable harm resulting from deliberate conduct is not an 'accident' and, thus, not an 'occurrence' under the Policy at issue."). And even if her alleged injuries or damages were proven to be caused by an "occurrence," coverage would be precluded by the exclusion for injuries or damages "expected or intended from the standpoint of [Del Ray]," given that the complained-of conduct is knowingly failing to pay the utility bills. Dkt. No. 5-1 at 100; Dkt. No. 5-2 at 43; *see also* Dkt. No. 3 at 27–28. Similarly, with respect to "personal and advertising injury," assuming Doerr could show such injury as defined by the predicate offenses listed in the policies, multiple exclusions would prevent coverage; namely, the exclusions for the knowing violation of the rights of another and breach of contract. *See* Dkt. No. 5-1 at 67, 76; Dkt. No. 5-2 at 47, 54; Dkt. No. 3 at 32–34.

      *(b) Longview's allegations*

Longview's two-page amended complaint alleges that Del Ray established utility accounts for each of its mobile home park locations and became delinquent on payment. Dkt. No. 1-5 at 2–3. Longview titles its amended complaint as being for "monies owed," and in addition to a judgment in the amount of its unpaid utility bills, also seeks interest and fees. *Id.* Like Doerr, the allegations in Longview's amended complaint cannot be construed as constituting bodily injury, property damage, or personal and advertising injury as defined in Plaintiffs' policies. Under either the General Liability Policy or Businessowners Policy, "bodily injury" requires an injury "sustained by a person," which is not applicable to Longview, a government entity. Dkt. No. 5-1 at 99; Dkt. No. 5-2 at 52. Moreover, "property damage" necessitates injury to, or the loss of use of

"tangible property," as opposed to pure money damages. Dkt. No. 5-1 at 76–77; Dkt. No. 5-2 at 54; *see* Dkt. No. 3 at 21–22; *State Farm Fire & Cas. Co. v. Heather Ridge, L.P.*, No. C12-1085-RSM, 2013 WL 179713, at *3–4 (W.D. Wash. Jan. 15, 2013) (reasoning that breach of contract claims do not assert injury to tangible property because they are economic in nature); *Scottsdale Ins. Co. v. Int'l Protective Agency, Inc.*, 19 P.3d 1058, 1061 (Wash. Ct. App. 2001) (defining "tangible property" as property that has "physical form and substance" (cleaned up)). And like Doerr's allegations, any "personal and advertising injury" would be subject to the applicable exclusions for the knowing violation of the rights of another and breach of contract. Dkt. No. 5-1 at 67, 76; Dkt. No. 5-2 at 47, 54; Dkt. No. 3 at 32–34.

For the foregoing reasons, the Court concludes that Plaintiffs have no duty to defend Del Ray in the underlying litigation.

> 2. Plaintiffs have no duty to indemnify Del Ray under either the General Liability Policy or the Businessowners Policy

Plaintiffs also seek a declaration that they have no duty to indemnify Del Ray for liability arising from the underlying lawsuit. Whereas the duty to defend is triggered when a complaint alleges facts which *could* impose liability, the duty to indemnify is narrower and only "applies to claims that are *actually* covered[.]" *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013) (emphasis in original); *accord Woo*, 164 P.3d at 459; *see also Hay v. Am. Safety Indem. Co.*, 752 F. App'x 460, 461 (9th Cir. 2018). For the same reasons supporting the finding that Plaintiffs have no duty to defend Del Ray in the state court action, the Court concludes that any liability Del Ray may ultimately incur in that lawsuit would unambiguously fall outside the scope of the policies' coverage.[6] Accordingly, Plaintiffs have no duty to indemnify Del Ray in the underlying

---

[6] At this point, the underlying action remains pending in Cowlitz County Superior Court and any liability Del Ray has incurred thus far appears primarily based on its conduct during the litigation. *See, e.g.*, Dkt. No. 4-7 (finding Del Ray in contempt of court and awarding attorney's fees). However, the Ninth Circuit has long held that a claim for declaratory relief on an insurer's duty to indemnify "was sufficiently ripe, even when the underlying liability action

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 11

litigation and may withdraw from defense. *See Mid-Century Ins. Co. v. Hunt's Plumbing & Mech. LLC*, No. C19-0285-JLR, 2019 WL 4464302, at *8 (W.D. Wash. Sept. 17, 2019) ("Where there is no duty to defend or indemnify, an insurer is entitled to withdraw from defense.").

    3. <u>Plaintiffs are entitled to seek reimbursement of defense costs from the date of the July 12, 2022 reservation of rights letter</u>

As for Plaintiffs' contention that they may recover costs incurred defending in the underlying action starting from the July 12, 2022 reservation of rights letter, the Court finds that the relevant policy language permits such efforts. Specifically, the Businessowner Policy states:

> If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense of the payment of defense costs and to seek reimbursement for defense costs.

*See* Dkt. No. 5-2 at 76; *see* Dkt. No. 5-1 at 174 (same for General Liability Policy). In their July 2022 letter, Plaintiffs state that under the above endorsement, they have "the right to reimbursement" for the costs initially paid to defend Del Ray if it is later determined that the claims for which they provided a defense are not covered under the policies. *See* Dkt. No. 1-14 at 16, 18.

Under Washington law, insurers generally may not seek reimbursement for defense costs incurred while their duty to defend remains uncertain. *See Immunex*, 297 P.3d at 693–95. As the Washington Supreme Court explained, "[t]his 'all reward, no risk' proposition renders the *defense* portion of a reservation of rights defense illusory" because "[t]he insured receives no greater benefit than if its insurer had refused to defend outright." *Id.* at 694 (emphasis in original).

---

in state court had not yet proceeded to judgment." *Kearns*, 15 F.3d at 144; *see also Safeco Ins. Co. of Am. v. Young*, No. 2:22-CV-00896-BJR, 2022 WL 4754922, at *4 (W.D. Wash. Oct. 3, 2022) (granting summary judgment on declaratory judgment claim seeking ruling on duty to indemnify even though underlying lawsuit remained pending).

Concluding otherwise would mean that an insurer's "'offer' to defend would serve solely to protect itself from claims of breach while placing the full risk of a determination of noncoverage on its insured." *Id.* On the other hand, at least one court in this district has found that when the insurance policy at issue contains language reserving the right to recover defense costs if a court ultimately determines that no duty to defend exists, recoupment is allowed. *See Massachusetts Bay Ins. Co. v. Walflor Indus., Inc.*, 383 F. Supp. 3d 1148, 1166–69 (W.D. Wash. 2019) (upholding a virtually identical endorsement permitting insurer to recoup the defense costs it paid in an underlying lawsuit). The court in *Massachusetts Bay* reasoned that unlike in *Immunex*, where the court rejected an independent right to recoupment untethered to any express policy—effectively allowing an insurer "'to impose a condition on its defense that was *not bargained for*'"—policies with express endorsements stating that insurers are entitled "to seek reimbursement for defense costs" are permissible. *Id.* at 1167 (quoting *Immunex*, 297 P.3d at 694).

In this case, the Court finds that Plaintiffs' ability to recover costs incurred defending in the underlying suit was explicitly bargained for, and is therefore valid under the relevant policy endorsements. In light of the Court's ruling on Plaintiffs' motion for summary judgment, Plaintiffs may seek reimbursement of defense costs incurred after July 12, 2022.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for summary judgment. Dkt. No. 3.

Dated this 1st day of May, 2023.

Barbara Jacobs Rothstein
U.S. District Court Judge